474 So.2d 259 (1985)
James GRANT, Appellant,
v.
STATE of Florida, Appellee.
Nos. AQ-233, AT-78.
District Court of Appeal of Florida, First District.
June 7, 1985.
Rehearing Denied September 6, 1985.
Michael E. Allen, Public Defender, Carl S. McGinnes, Asst. Public Defender, for appellant.
Jim Smith, Atty. Gen., Barbara Ann Butler, Asst. Atty. Gen., for appellee.
*260 MILLS, Judge.
This is a consolidated appeal from judgments and sentences for first degree murder, armed robbery and trafficking in stolen property, and from an order dismissing a petition for a writ of quo warranto. We affirm.
Houston Price worked as a gasoline tanker truck driver for Florida Rock and Tank Lines. On 23 October 1981, his body was found in the cab of his truck. He had been shot in the back of the head three times. The truck was parked behind the Biltmore Starter and Alternator building in Jacksonville. Its tanks were empty.
Grant, a truck driver and former Florida Rock and Tank Lines employee, was charged with first degree murder, armed robbery and trafficking in stolen property. He pleaded not guilty and was tried by jury.
The State contended Grant killed Price on the evening of 22 October 1981, stole the gasoline and sold it to a service station owner named William Walker.
Walker testified that Grant approached him approximately two weeks before the murder and asked if he was interested in buying a load of gasoline. Walker said he expressed interest and that Grant delivered the gasoline in a Florida Rock and Tank Lines truck between 9:00 and 9:45 p.m. on 22 October 1981. Walker identified Price's truck as the truck Grant drove.
Two witnesses testified they saw Price filling his tanker at approximately 9:15 p.m. on 22 October. There was testimony that Grant was familiar with the terminal where Price filled his tanker and, in fact, knew Price from his former employment with Florida Rock and Tank Lines. A witness testified that, between 10:00 and 11:00 p.m. on the night in question, he saw Price's truck being driven by a black man with a muscular build (Grant is both; Price was white). Another witness testified he saw a Florida Rock and Tank Lines truck drive up and stop behind Biltmore Starter and Alternator at approximately 10:45 p.m.
It was established that Price died from three .22 caliber gunshot wounds to the head. A ballistics expert testified that a pistol found in Grant's home could have fired the shots.
Grant's alibi was that he was at a Jacksonville bar on the evening of 22 October. He presented three corroborating witnesses. At trial, Grant also defended on the grounds he did not need money and therefore had no motive.
The jury found Grant guilty as charged. The trial court imposed consecutive sentences of life imprisonment for first degree murder, 199 years for armed robbery, and 15 years for trafficking in stolen property.
Grant first challenges the sufficiency of the evidence against him. He contends the trial court erred in denying his motions for judgment of acquittal because the circumstantial evidence did not rebut all reasonable hypotheses of innocence. Although circumstantial, the substantial evidence against Grant was such that the jury could reasonably conclude it excluded any reasonable hypothesis of innocence.
In a related argument, Grant contends he is entitled to a new trial because the trial court used an improper standard in ruling on the motions for judgment of acquittal. In denying the motions, the trial court stated the evidence was not as consistent with innocence as with guilt.
The proper standard to be applied by the trial court in a circumstantial evidence case when the defendant moves for judgment of acquittal is whether the jury can reasonably conclude that the evidence excludes any reasonablehypothesis of innocence. Jones v. State, 466 So.2d 301 (Fla. 3d DCA 1985), and cases cited therein. Although the trial court apparently used a less stringent standard, the error is not reversible because we have concluded that the evidence was sufficient under the proper standard. We apply the familiar rule that an appellate court will not reverse when the trial court reaches the right result for the wrong reason.
*261 Next, Grant contends the trial court failed to conduct an adequate inquiry, as required by Richardson v. State, 246 So.2d 771 (Fla. 1971), when defense counsel objected to the testimony of a rebuttal witness whose name had not been disclosed to the defense.
In support of the lack of motive defense, Grant's wife testified she earned $1,000 monthly and Grant earned $4,000 to $6,000 monthly. On cross-examination, the prosecutor asked Mrs. Grant if she failed to make car payments in August, September, or October 1981. She denied she had, or could not recall.
After the defense rested, the State called Thompson, an employee of Ford Motor Credit Company, as a rebuttal witness. Thompson was allowed to testify, over objection, that the Grants missed car payments in September 1981.
Grant contends the State's failure to disclose Thompson's name was a violation of Florida Rule of Criminal Procedure 3.220(a)(1)(i). He contends this violation, when brought to the trial court's attention, required the trial court to conduct a Richardson inquiry to determine whether the violation prejudiced Grant and, if so, the appropriate sanction to impose.
Rebuttal witnesses, the necessity for whom the State can reasonably anticipate, must be disclosed pursuant to Rule 3.220(a)(1)(i). Lucas v. State, 376 So.2d 1149 (Fla. 1979); Witmer v. State, 394 So.2d 1096 (Fla. 1st DCA 1981). We cannot say, however, that the State could reasonably anticipate the need for Thompson's testimony. The defense did not disclose its lack of monetary motive defense before trial. Thompson's testimony was not relevant until Mrs. Grant denied missing car payments. Because the State did not violate Rule 3.220(a)(1)(i), the trial court had no duty to conduct a Richardson inquiry.
Finally, we address Grant's contention that the convictions must be reversed because the prosecutor, who also advised the grand jury that indicted Grant, was in violation of the Article II, Section 5(a), Florida Constitution prohibition of dual officeholding.
Before trial, Grant unsuccessfully petitioned the circuit court for a writ of quo warranto. At the hearing on the petition, it was established that the prosecutor had been appointed Special Assistant United States Attorney limited to one case arising out of a local criminal investigation. It was also established that he received no remuneration for serving in this position.
Grant's contention is without merit because such a position is not an "office of emolument" within the meaning of Article II, Section 5(a), Florida Constitution. Cf. Vinales v. State, 394 So.2d 993 (Fla. 1981).
Grant makes other arguments we find meritless.
AFFIRMED.
NIMMONS, J., and PEARSON, TILLMAN (Ret.), Associate Judge, concur.