IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

AMANDA K. JACKSON,

        Appellant,

v.

        Case No.  5D16-619

STATE OF FLORIDA,

        Appellee.

_____

Opinion filed September 7, 2017

Appeal from the Circuit Court
for Putnam County,
Clyde E. Wolfe, Judge.

James S. Purdy, Public Defender, and
Nancy Ryan, Assistant Public Defender,
Daytona Beach, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Kellie A. Nielan, Assistant
Attorney General, Daytona Beach, for
Appellee.

COHEN, C.J.

      Amanda Jackson appeals the denial of her motion for a new trial, which was

entered after she was convicted of leaving the scene of a crash involving death. On

appeal, Ms. Jackson raises a number of issues, one of which requires reversal. She

argues that the trial court erred in failing to hold a Richardson[1] hearing after the State

---

[1] Richardson v. State, 246 So. 2d 771 (1971) (requiring trial court to conduct hearing when it learns of discovery violation to determine whether violation was (1) willful; (2) substantial; and (3) prejudicial to opposing party's trial preparation).

introduced an admission into evidence that was not disclosed during discovery. We agree and therefore reverse and remand for a new trial.

The facts of this case are tragic. In 2010, a one-year-old child was struck and killed by a vehicle while crawling in the street. The child lived in the Silver Lakes Trailer Park with his mother. Ms. Jackson was the manager of the trailer park and lived there with her husband, Austin Jackson. Law enforcement determined that the vehicle involved was a red pickup truck but were unable to either locate the truck or establish the identity of the driver.[2]

More than two years later, the Putnam County Sheriff's Department received a tip that implicated Ms. Jackson as the driver of the pickup truck that had struck and killed the child. As a result, officers interviewed Ms. Jackson. The interview took place at the Sheriff's Office and lasted over two hours. For the first hour and a half, Ms. Jackson either denied involvement or stated that she could not remember what occurred that day. After the detective interviewing Ms. Jackson suggested that witnesses had identified her as the driver, she changed her story and confessed to running over the child. No such witnesses existed.

Ms. Jackson's confession was admitted into evidence and published to the jury. Jackson's central defense theory was that the confession had been obtained improperly:

---

[2] Mr. Jackson owned a red pickup truck. Testimony was in dispute as to whether Mr. Jackson's truck was examined by law enforcement on the day of the incident. Mr. Jackson claimed that it was; the law enforcement officers suggested otherwise. There is no dispute that the Jackson vehicle was present at the trailer park during the course of the investigation, and no explanation was offered as to why it would not have been examined. Additionally, there was evidence presented that prior to the incident, Mr. Jackson had been negotiating a deal to swap his truck tires with those of an acquaintance, Billy Fowler. Initially, Mr. Jackson wanted an additional $200 to make the trade. After the incident, however, the two traded the tires without exchanging any money. Fowler testified that Mr. Jackson appeared eager to get rid of the tires.

that she was susceptible to coercion and that the resulting confession was unreliable. As part of that defense, Ms. Jackson called Dr. Gregory DeClue as a witness. Dr. DeClue is a board-certified forensic psychologist who spent much of his career working for law enforcement agencies and training officers how to conduct and ensure the integrity of interrogations. Dr. DeClue was highly critical of the techniques used during the course of Ms. Jackson's interrogation and suggested that the techniques employed were susceptible to securing a false confession.

On rebuttal, the State called Dr. William Meadows, who is also a forensic psychologist. Dr. Meadows conducted an interview with Ms. Jackson in preparation for his trial testimony. Ms. Jackson's counsel was present for that evaluation. The State asked Dr. Meadows whether Ms. Jackson stated that she felt pressured to confess, and Dr. Meadows responded, "She—she did indicate that she felt pressured, and she made an interesting statement when I asked her about that. She said she felt pressured because the detective knew that [she] had done it." The defense immediately objected, arguing that Ms. Jackson did not make that statement and Dr. Meadows mischaracterized what she said during the evaluation. The defense then moved for a mistrial, claiming that Dr. Meadows's testimony amounted to the introduction of an admission by Ms. Jackson, which the State had not disclosed to the defense during discovery. The trial court denied Ms. Jackson's motion for a mistrial, and she was subsequently convicted as charged.

Ms. Jackson argues that the trial court erred in failing to conduct a Richardson hearing to address the defense's claim that the admission entered through Dr. Meadows's testimony constituted a discovery violation. While Ms. Jackson's counsel did not specifically request such a hearing, the contemporaneous objection and motion for

3

mistrial were sufficient to apprise the trial court of the necessity of conducting such an inquiry. See Rath v. State, 627 So. 2d 24, 25 (Fla. 5th DCA 1993).

The content of Dr. Meadows's testimony about Ms. Jackson's statement during the interview was the equivalent of an admission of guilt by Ms. Jackson. The presence of Ms. Jackson's attorney during the interview with Dr. Meadows did not negate the necessity for a Richardson hearing—defense counsel argued that Ms. Jackson never made any such admission and that Dr. Meadows mischaracterized her statement. The State did not provide the statement to the defense either in its response to the demand for discovery or in a written report from Dr. Meadows.[3] The introduction of such a previously undisclosed admission, particularly when the validity of a confession to law enforcement was the crux of the defense, cannot be minimized. Therefore, the trial court erred in failing to hold a Richardson hearing. Due to the significant and prejudicial nature of the testimony, we cannot conclude that the trial court's failure to conduct such an inquiry was harmless error in this case. Accordingly, we reverse and remand for a new trial.[4]

REVERSED and REMANDED FOR A NEW TRIAL.

WALLIS and LAMBERT, JJ., concur.

---

[3] The State is obligated to disclose during discovery "the substance of any oral statements made by the defendant." Fla. R. Crim. P. 3.220(b)(1)(C). This is a continuing obligation. Fla. R. Crim. P. 3220(j).

[4] Because we are reversing for a new trial, we need not address Ms. Jackson's remaining arguments on appeal.